**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

---

CALANDRA HARDIN,

    Plaintiff,

vs.

DMC – MEMPHIS, LLC (a/k/a and d/b/a Delta Specialty Hospital),

    Defendant.

CASE NO.

**JURY DEMANDED**

---

**COMPLAINT**

---

TO THE HONORABLE DISTRICT COURT JUDGE:

    Plaintiff Calandra Hardin (hereinafter "Plaintiff"), by and through undersigned counsel, and for her causes of action against Defendant DMC – Memphis, LLC (a/k/a and d/b/a Delta Specialty Hospital) (hereinafter "Delta"), alleges as follows:

### I.   PARTIES

    1.    Plaintiff is an adult female resident of Shelby County, Tennessee with a diagnosis of depression and schizophrenia.

    2.    Delta is an inpatient and outpatient behavioral healthcare treatment center in Memphis, Tennessee located at 3000 Getwell Road, Memphis, Tennessee 38118. Delta can be served through its registered agent C T Corporation System located at 300 Montvue Road, Knoxville, Tennessee 37919. Delta is a private corporation which accepts federal funds, including, but not limited to, through the acceptance of Medicare and Medicaid and is therefore subject to the Rehabilitation Act of 1973, 29 U.S.C. § 794.

### II.   SUBJECT MATTER AND JURISDICTION

3. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a) on the grounds that the claims asserted herein arise under the Rehabilitation Act of 1973, 29 U.S.C. § 794.

4. The unlawful practices alleged in this Complaint occurred in Shelby County, Tennessee. Accordingly, venue lies in the United States Court for the Western District of Tennessee, under 28 U.S.C. § 1391(b). Delta is a private corporation doing business in this judicial district within the meaning of 28 U.S.C. § 1391(c).

### III.   FACTUAL HISTORY

5. Delta Specialty Hospital has a systemic problem related to the failure to supervise violent male patients which directly result in sexual assaults.

6. In the Summer of 2021, George Boyd sexually assaulted another male patient who was in a wheelchair.[1]

7. In the Spring of 2022, Lazarick Ballard, another male who had access to a female patient's room, walked into a woman's room, pinned her down, and sexually assaulted her. When she escaped the room Lazarick followed her and sexually assaulted her in the room across the hallway.[2]

---

[1] Shay Arthur, *Man facing rape charges after secually assaulting another man at Memphis behavioral hospital, police say*, WREG (July 20, 2021, 5:08 PM) https://www.google.com/amp/s/wreg.com/news/man-facing-rape-charges-after-sexually-assaulting-another-man-at-memphis-behavioral-hospital-police-say/amp/

[2] Shay Arthur, *Man accused of raping woman at Delta Specialty Hospital*, WREG (April 20, 2022, 5:33 PM) (updated April 21, 2022, 2:48 PM) https://www.google.com/amp/s/wreg.com/news/local/man-accused-of-raping-woman-at-delta-medical-center/amp/

8. In the Spring of 2023, less than two weeks before the sexual assault of Plaintiff, Tracy Booker, a known sexual predator who was on the Sex Offender Registry was given unsupervised access to female patients. This access allowed him to push this victim into a bathroom and sexually assault her. Surveillance footage captured the moment Tracy pushed his victim into the bathroom.[3]

9. On February 12, 2023, Plaintiff suffered a mental health episode which required the Memphis Police Department's Care Team along with a Crisis Intervention officer to interact with Plaintiff. The team determined Plaintiff was not mentally competent and transported her to Delta for emergency commitment and treatment.

10. In the early hours of February 13, 2023, Plaintiff was admitted to Delta for depression and psychosis. Dr. Olayinka Akinwumiju listed the following as justification for emergency involuntary inpatient hospitalization of Plaintiff:

> Failure of treatment at a lower level of care, Hallucinations, delusions, agitation, anxiety, depression resulting in a significant loss of functioning, Dangerous to self, others or property with need for controlled environment, Emotional or behavioral conditions and complications requiring 24 hour medical and nursing care, Failure of social or occupational functioning

In other words, Plaintiff, a young, small female suffering from extensive mental health concerns, was a particularly vulnerable patient.

11. Delta housed Plaintiff in such a way that she constantly had unsupervised interaction with members of the opposite sex, all the while being on notice of Plaintiff's decompensated mental state.

---

[3] Melissa Moon, *Convicted sex offender accused of raping woman inside Tennessee hospital*, CBS News (February 3, 2023, 8:50 AM) https://www.google.com/amp/s/www.cbs42.com/news/crime/convicted-sex-offender-accused-of-raping-woman-inside-tennessee-hospital/amp/

12. Delta knew or should have known, that the unsupervised interaction of members of the opposite sex with Plaintiff could result in a sexual assaults, and Delta had a duty to ensure that such interactions did not occur.

13. On February 15, 2023, Plaintiff was sexually assaulted by two male patients of Delta in an unsecured room. The male perpetrators of the assault were more often than not unsupervised. This is supported by the fact that they were allowed to transport a mattress to a room located on the first floor near the lunch room, this room was referred by Ms. LaToria Young (hereinafter "Ms. Young"), Delta's Director of Risk Management, as the "cubby hole room."

14. Plaintiff lacked the ability to consent to sexual intercourse. She had been deemed mentally incapacitated to the point that it required her involuntary commitment to Delta both by the State and by Delta. Plaintiff's assailants therefore committed the crime of rape just by the mere fact that they had sex with a mentally incapacitated victim. *See* Tenn. Code Ann. § 39-13-503(a)(3)(B).

15. The assault is believed to have occurred between the hours of 10:10 AM and 1:15 PM. The unsupervised movements of Plaintiff and her two assailants were captured on security footage of the elevators, hallways, and unit floors. Despite being immediately put on notice of this assault and Plaintiff's mother's desire to have police services involved, Ms. Young allowed all video evidence related to the assault to be destroyed.

16. Following the sexual assault, at 1:15 PM Plaintiff was observed exiting the elevator and was followed back to her unit by Registered Nurse Hannah Hoestrup because Plaintiff was unsupervised.

17. Despite the fact that Plaintiff was being sexually assaulted in an unsecured room which also had no video surveillance available inside the room and wandering the hallways of the

facility unsupervised, Delta employees V. Johnson and Vaquel Williams falsified Plaintiff's Observation Sheet for February 15, 2023, between the hours of at least 10:10 AM and 1:15 PM to show that Plaintiff was in her room and calm. Whether these false observations were created to conceal Plaintiff's assault is a matter that will be explored further during this litigation.

18.  Two employees received corrective action and punishment related to Plaintiff's claims. Those employees are Michala Lumpkin and Vaquel Williams. Their actions in this matter will be further developed through discovery. However, Plaintiff avers that Vaquel Williams was likely punished for his falsification of medical records.

19.  Despite the fact that Plaintiff lacked the ability to consent to sexual intercourse, Delta employees intercepted Memphis Police Department officers on February 15, 2023, when they responded to the facility following the 911 call by Plaintiff's mother, and those employees dissuaded the responding officers from interviewing or taking a statement from Plaintiff. It is believe that Ms. Young was the employee that intercepted those officers and dissuaded their investigation, as she was on the phone with Plaintiff's mother and ended the call as officers were arriving at the facility.

20.  Again, following Ms. Young's interactions with police she allowed each and every video tape related to Plaintiff's claims to be destroyed.

21.  Rather than participate in a proper sexual assault investigation, Delta and its employees purposefully intervened to prevent yet another investigation into sexual misconduct at the hospital.

22.  Upon information and belief, Delta employs no meaningful security personnel present at the facility, rather nurses and technicians are solely responsible for interacting with violent or aggressive patients and preventing harm to patients.

## IV.     CAUSES OF ACTION

**COUNT ONE**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973**
**AGAINST DEFENDANT SCS**

23. Plaintiff restates and realleges the contents of the above paragraphs, as if fully set forth herein.

24. Delta is a recipient of federal funds, and its programs are covered by Section 504 of the Rehabilitation Act of 1973.  29 U.S.C. § 794 (b)(2)(A).

25. Plaintiff is a person with a disability as defined by the Rehabilitation Act.

26. Plaintiff, with or without reasonable accommodations, was otherwise qualified to be a patient at Delta's facility.

27. Plaintiff's disability required the reasonable accommodation of constant supervision, an accommodation that Delta and its medical staff were well aware of when they accepted her as a patient. Constant supervision is a reasonable accommodation which is routinely provided to decompensated patients, such as Plaintiff, at mental health facilities.

28. The refusal of Delta, to provide reasonable accommodations to Plaintiff as a result of her disability denied her the benefits of enrollment at Delta by excluding her from participation in, from being denied the benefits of, or being subjected to, discrimination solely because of her disability. The failure to accommodate is in violation of 29 U.S.C. § 794.

29. Delta, through its employees and agents, knew that failing to provide Plaintiff and other like patients with such reasonable accommodations would exclude them from participation in and the benefit of the programs offered by Delta and that by failing to provide such reasonable accommodations amounted to discrimination because of their disabilities.

30. Also, Delta, through its employees and agents, knew of a substantial risk of harm to decompensated and/or incompetent patients and chose to ignore the risks to these individuals.

31. Plaintiff was denied services, programs, or activities because she could not access the therapy and educational programs due to refusal to accommodate her extensive disabilities.

32. Delta has been and continues to be deliberately indifferent to its vulnerable disabled patients by failing to hire adequate security, to implement appropriate safety plans, or to provide constant supervision to its vulnerable and disabled patients who are deemed in decompensated states or incompetent. This is evident from the continued reports of sexual assault on decompensated and/or incompetent patients.

33. Delta gives disparate treatment to vulnerable decompensated patients and psychiatrically incompetent patients from the mentally capable by allowing patients with such disabilities to roam the halls of Delta's facility unsupervised. This lack of supervision allows Delta to provide counseling services to those more competent patients and evidences Delta's deliberate indifference to the decompensated and/or incompetent patients results in a denial of access to the mental health treatment these individuals, including Plaintiff, so desperately need. This disparate treatment of individuals with disabilities that render them decompensated or incompetent is a violation of Section 504.

34. As a result of Delta's actions or inactions, Plaintiff was unnecessarily excluded from participation in or denied the benefits of or denied access to the facilities, services, programs, or activities of Delta, or subjected to discrimination by Delta. Plaintiff has suffered severe humiliation, embarrassment, physical pain and suffering, and loss of enjoyment of life, and has suffered other pecuniary and non-pecuniary losses.

**COUNT 2 - HEALTHCARE LIABILITY CLAIMS AGAINST DELTA**

35. Plaintiff restates and realleges the contents of the above paragraphs, as if fully set forth herein.

36. At all times relevant to this Complaint, Delta owed Plaintiff and other patients a duty of care to provide appropriate medical care that met the standard of care in Shelby County, Tennessee and to properly evaluate the patients under its care in order to provide a safe and secure environment to all patients. Delta was at all times responsible for the continuity of care received or not received by Plaintiff and her assailants.

37. Delta owed a duty to not only its patients but all patients at the facility, including Plaintiff, to provide care, treatment and services of a reasonably prudent healthcare provider under same or similar circumstances, including proper evaluation, diagnosis and care of patients. Further, Delta had a duty to provide treatment within the applicable standard of care of this or a similar community and take all reasonable steps to ensure that Delta's staff were properly observing patients and delivering appropriate care and services to patients.

38. Delta breached its duty of care and was negligent and/or reckless, in general, and specifically for the reasons set forth in the detailed factual allegations above. Without limiting this general allegation of recklessness and negligence, Delta was reckless and negligent in the following respects:

   a. Negligently and/or recklessly failing to observe the recognized standards of acceptable professional practice;

   b. Negligently and/or recklessly failed to appropriately account for Plaintiff's assailants known violent behaviors;

   c. Negligently and/or recklessly failed to order appropriate and reasonable level of observation for Plaintiff or her assailants; and

   d. Negligently and/or recklessly failed to communicate or take appropriate steps to ensure that its staff and/or nurses were aware that Plaintiff's assailants were a danger to others.

39. These deviations from the standard care resulted in liability for Delta under the Tennessee Healthcare Liability Act and are the direct and proximate cause of Plaintiff's previously-described physical injuries, pain, suffering, and emotional distress.

### COUNT THREE – PREMISES LIABILITY/NEGLIGENCE AGAINST DELTA

40. Plaintiff incorporates by reference each and every aforementioned allegation in this Complaint as if fully set forth herein verbatim.

41. Delta had a duty to provide a reasonable safe location for business invitees of the facility, including Plaintiff. That duty included an obligation to guard against the criminal acts of third parties where they knew or had reason to know that criminal acts were occurring or about to occur.

42. Defendants breached their duty including, but not limited to, the following:

   a. failure to provide a sufficient number of security personnel;

   b. failure to properly hire, train, supervise, and discipline their employees;

   c. failure to implement and enforce policies and procedures concerning security measures;

   d. failure to implement and enforce proper policies and procedures designed to protect business invitees from criminal activity;

   e. failure to implement a best practices plan including a security plan which is generally accepted within the industry in order to prevent harm and protect customers;

   f. failure to recognize that criminal activity was occurring on the premises;

   g. failure to call the police after being placed on specific notice that criminal activity was occurring or about to occur on the premises; and

   h. failure to warn customers that criminal activity often occurred at the facility so that customers could take action to protect their safety.

43. Based on the history of criminal activity at Delta's facility it was highly foreseeable that business invitees such as Plaintiff visiting the facility might be subject to violent criminal behavior.

44. As a result of Delta's negligence set forth herein Plaintiff suffered injuries and damages which otherwise would not have occurred.

45. The acts and omissions of Delta alleged herein constitute a conscious disregard of a substantial and unjustified risk of injury and/or death to the public and constitute a gross deviation from the standard of care that an ordinary person would exercise under the circumstances which rise to the level of recklessness entitling Plaintiff to a substantial award of punitive damages.

## **COUNT FOUR – NEGLIGENT HIRING, SUPERVISION, AND TRAINING**

46. Plaintiff incorporates by reference each and every aforementioned allegation in this Complaint as if fully set forth herein verbatim

47. Delta owed a duty to the public, including Plaintiff, to act in a reasonable and prudent manner in the operation of its business including, but not limited to, hiring qualified employees, providing proper training, and providing proper supervision of its employees.

48. Delta breached this duty by negligently hiring, training, and/or supervising its employees in each of but not limited to the following ways:

    a. failure to hire qualified and competent employees;

    b. failure to properly train and educate its employees;

    c. failure to properly supervise and discipline its employees; and

    d. failure to use the degree of care required under the circumstances.

49. As a direct and proximate result of Delta's own direct negligence, the Plaintiff suffered injuries and damages which would otherwise have not occurred.

50. The actions of Delta alleged herein constitute a conscious disregard of a substantial and unjustified risk of injury and/or death to the public and constitute a gross deviation from the standard of care that an ordinary person would exercise under the circumstances which arises to the level of recklessness entitling Plaintiff to a substantial award of punitive damages.

## V.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant on each Count of the Complaint and prays for the following relief:

1. Permit Plaintiff leave to amend this Complaint after reasonable discovery;

2. Empanel a jury to try this matter;

3. Award Plaintiff compensatory damages in an amount to be determined by a jury;

4. Award Plaintiff punitive damages in an amount to be determined by a jury;

5. Award Plaintiff his reasonable attorney's fees, pursuant to 42 U.S.C. § 12205;

6. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

7. Award pre-and post-judgment interest in the amount of 10% per annum pursuant to TENN. CODE ANN. § 47-14-123; and

8. Grant Plaintiff such further relief as the Court may deem just and proper.

[Signature on following page]

        Respectfully submitted,

        <u>/s/ *Craig A. Edgington*</u>
        Craig A. Edgington (#38205)
        Brice M. Timmons (#29582)
        Melissa J. Stewart (#40638)
        Donati Law, PLLC
        1545 Union Ave.
        Memphis, Tennessee 38104
        (901) 278-1004 (Office)
        (901) 278-3111 (Fax)
        craig@donatilaw.com
        brice@donatilaw.com
        melissa@donatilaw.com
        *Counsel for Plaintiff*